IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SAMSUNG ELECTRONICS CO., LTD.,　）
SAMSUNG SEMICONDUCTOR, INC.　）
and SAMSUNG ELECTRONICS　）
AMERICA, INC.,　）
　　　　　　　　　　　　　）
　　　　　　　Plaintiffs,　）
　　　　　　　　　　　　　）
　　　v.　）　C.A. No. 23-1122-JLH
　　　　　　　　　　　　　）
NETLIST, INC.,　）
　　　　　　　　　　　　　）
　　　　　　　Defendants.　）

**DEFENDANT NETLIST, INC.'S ANSWER, AFFIRMATIVE DEFENSES,
AND COUNTERCLAIMS TO THE COMPLAINT**

On October 9, 2023, Plaintiffs Samsung Electronics Co., Ltd. ("SEC"), Samsung Semiconductor, Inc. ("SSI") and Samsung Electronics America, Inc. ("SEA") (collectively "Plaintiffs" or "Samsung") filed a Complaint for Declaratory Judgment of Non-Infringement; Breach of Contract ("Complaint") against Defendant Netlist, Inc. ("Netlist"). D.I. 1. The Complaint seeks a declaration that Samsung does not directly or indirectly infringe United States Patent No. 11,386,024 (the "'024 Patent"). *Id*.

Netlist, by and through its undersigned attorneys, submits this Answer to Samsung's Complaint. Solely for convenience, some of the headings from the Complaint are reproduced here. Any allegations not specifically admitted herein are denied.

**NATURE OF THE ACTION**

1.　Netlist admits that Plaintiffs have filed this lawsuit but denies any liability including for declaratory judgment and breach of contract. Netlist denies that Plaintiffs are entitled to the relief they seek.

2.      Netlist admits that Netlist and SEC entered into a Joint Development and License Agreement (the "JDLA") in November 2015, which granted Samsung a license to certain Netlist's patents subject to various exceptions and limitations.  Netlist admits that it terminated the JDLA no later than July 15, 2020.  Netlist admits that it is the assignee of the '024 Patent.  The remaining allegations in this paragraph state legal conclusions to which no response is required.  To the extent any response is necessary, Netlist denies.

3.      The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

## THE PARTIES

4.      Netlist is without knowledge sufficient to admit or deny the allegations in this paragraph of the Complaint and, therefore, denies.

5.      Netlist is without knowledge sufficient to admit or deny the allegations in Paragraph 5 of the Complaint and, therefore, denies.

6.      Netlist admits that it has filed a registration for incorporation under the laws of the State of Delaware.  With respect to the remaining allegations in paragraph 6, Netlist denies.

## JURISDICTION AND VENUE

7.      The allegations of Paragraph 7 state a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

8.      The allegations of Paragraph 8 state a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

9.      Netlist admits that this Court has personal jurisdiction over Netlist.

10.      Netlist admits that this Court is a proper venue for this Action.

11.     The allegations of Paragraph 11 state a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

12.     The allegations of Paragraph 12 state a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

13.     Paragraph 13 purports to reference a Notice of Infringement letter Netlist sent to SEC, SSI and SEA which speaks for itself.  Netlist admits that the '024 Patent is in the same patent family as the '595 and '218 patents.  Netlist admits that the '024 Patent is a continuation of the '595 patent, which is a continuation of the '218 patent.  Except as expressly admitted, Netlist denies the allegations of Paragraph 13.

14.     Netlist admits that Samsung filed a declaration judgment action against Netlist in this district involving the '218 and '595 patents.  Paragraph 14 purports to reference the procedural history of that action, and Netlist admits that the docket of that case speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 14.

15.     Paragraph 15 purports to reference the procedural history of IPRs against the '218 and '595 patents, and Netlist admits that the dockets of those IPRs speak for themselves.  Except as expressly admitted, Netlist denies the allegations of Paragraph 15.

16.     Netlist admits that Netlist's counsel sent Samsung's counsel an email regarding the Delaware litigation.

17.     Paragraph 17 purports to reference the procedural history of a district court litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 17.

18.    Paragraph 18 purports to reference the procedural history of a district court litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 18.

19.    Paragraph 19 purports to reference the procedural history of litigation in Germany, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 19.

20.    Netlist admits that it previously asserted Netlist's U.S. Patent Nos. 9,858,218 and 10,474,595 in litigation against SK hynix, Inc. and SK hynix America Inc. (collectively "SK hynix").  To the extent Plaintiffs contend that Netlist made any specific allegations in a separate action, the pleadings Netlist filed in such an action speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of Paragraph 20.

21.    Netlist admits that it is a party to *Netlist, Inc. v. Micron Technology, Inc. et al.*, No. 6:21-cv-430 (W.D. Tex.) and *Netlist, Inc. v. Micron Technology, Inc. et al.*, No. 6:21-cv-431 (W.D. Tex.).  To the extent Plaintiffs contend that Netlist made any specific allegations in a separate action, the pleadings and patent documents Netlist filed in such an action speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

22.    To the extent Plaintiffs contend that Netlist made any specific allegations in a separate action, the pleadings and patent documents Netlist filed in such an action speak for themselves, and therefore no response is needed.

23.    Netlist admits that it requested that Samsung take a license, that Samsung is on notice of all of Netlist's patents, and that Samsung declined.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

24.     The allegations of Paragraph 24 call for a legal conclusion to which no response is required. To the extent further response is necessary, Netlist denies.

25.     The allegations of Paragraph 25 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

26.     The allegations of Paragraph 26 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

## **BACKGROUND**

27.     Netlist admits that it entered into the JDLA with SEC on November 12, 2015.  To the extent that Plaintiffs state that the JDLA included certain provisions, the JDLA speaks for itself and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

28.     To the extent that Plaintiffs state that the JDLA included certain provisions, the JDLA speaks for itself and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

29.     To the extent that Plaintiffs state that the JDLA includes certain provisions, the JDLA speaks for itself and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

30.     To the extent that Plaintiffs state that the JDLA includes certain provisions, the JDLA speaks for itself and therefore no response is needed.  With respect to the remaining allegations in this paragraph, Netlist denies.

31.     Denied.

32. Paragraph 32 purports to reference a letter sent from Mr. Marc J. Frechette to Mr. Seung Min Sung. The referenced letter speaks for itself and therefore no response is needed. With respect to the remaining allegations in paragraph 32, Netlist denies.

33. Netlist admits that on May 28, 2020, the U.S. District Court for the Central District of California docketed Netlist's complaint against SEC, *Netlist Inc v. Samsung Electronics Co., Ltd.*, No. 8:20-cv-00993-MCS (C.D. Cal.) ("Breach Action").

34. Paragraph 34 purports to reference a letter sent from Mr. Marc J. Frechette to Mr. Seung Min Sung. The referenced letter speaks for itself and therefore no response is needed. With respect to the remaining allegations in paragraph 34, Netlist denies.

35. Paragraph 35 purports to reference Netlist's amended complaint filed in the Breach Action and the referenced amended complaint speaks for itself. Except as expressly admitted, Netlist denies the allegations of this paragraph.

36. Paragraph 36 purports to reference a letter sent from Mr. Marc J. Frechette to Mr. Seung Min Sung, and the letter speaks for itself. Except as expressly admitted, Netlist denies the allegations of this paragraph.

37. Paragraph 37 purports to reference a letter from Netlist's outside counsel to SEC dated October 15, 2020. The referenced letter speaks for itself and therefore no response is needed. Except as expressly admitted, Netlist denies the allegations of this paragraph.

38. Denied.

39. Admitted.

40. Netlist admits that a jury trial was held in the action *Netlist Inc. v. Samsung Electronics Co., Ltd*., No. 8:20-cv-993-MCS (C.D. Cal.). Paragraph 40 purports to reference the jury verdict, Samsung's motion, and other briefings and filings in the *Netlist Inc. v. Samsung*

*Electronics Co., Ltd.*, No. 8:20-cv-993-MCS (C.D. Cal.) action.  The referenced documents speak for themselves and therefore no response is necessary.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

41.     Paragraph 41 purports to quote and reference a webpage containing Netlist's press release.  The content on that cited webpage speaks for itself and therefore no response is necessary.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

42.     With respect to the first two sentences of paragraph 42, Netlist is without knowledge sufficient to admit or deny the allegations in Paragraph 42 and, therefore, denies.  The third sentence of paragraph 42 states a legal conclusion and therefore no response is necessary; but to the extent that further response is necessary, Netlist denies.

43.     Denied.

44.     Paragraph 44 purports to reference litigation in this district, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 44.

45.     Paragraph 45 purports to reference litigation in this district, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 45.

46.     Paragraph 46 purports to reference litigation in this district, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 46.

47.     Paragraph 47 purports to reference litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 47.

48.     Paragraph 48 purports to reference litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 48.

49.     Paragraph 49 purports to reference litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 49.

50.     Paragraph 50 purports to reference litigation in the Eastern District of Texas, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 50.

51.     Paragraph 51 purports to reference litigation in Germany, and Netlist admits that the docket of that action speaks for itself.  Except as expressly admitted, Netlist denies the allegations of Paragraph 51.

52.     Paragraph 52 purports to reference IPRs, and Netlist admits that the docket of those actions speak for themselves.  Except as expressly admitted, Netlist denies the allegations of Paragraph 52.

53.     Netlist denies the first two sentences of paragraph 53.  The rest of this paragraph purports to reference Netlist's pleadings filed in one or more past actions involving SK hynix, and Netlist admits the dockets of the referenced actions speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

54.     Paragraph 54 purports to reference one or more past actions involving SK hynix, and Netlist admits the dockets of the referenced actions speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

55.    Paragraph 55 purports to reference litigation involving Google, and Netlist admits the docket of the referenced action speaks for itself, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

56.    Paragraph 56 purports to reference litigation involving Inphi, and Netlist admits the docket of the referenced action speaks for itself, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

57.    Paragraph 57 purports to reference one or more past actions involving Micron, and Netlist admits the dockets of the referenced actions speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

58.    The allegations of Paragraph 58 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

59.    Paragraph 59 purports to reference a Notice of Infringement letter Netlist sent to SEC, SSI and SEA which speaks for itself.  The rest of the allegations of Paragraph 59 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

60.    Paragraph 60 purports to reference one or more past actions involving SK hynix, and Netlist admits the dockets of the referenced actions speak for themselves, and therefore no response is needed.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

61.    The allegations of Paragraph 61 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

62.    The allegations of Paragraph 62 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

63.     Paragraph 63 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

64.     Paragraph 64 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

65.     Paragraph 65 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

66.     Paragraph 66 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

67.     Paragraph 67 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

68.     Paragraph 68 purports to reference the '024 Patent, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

69.     Paragraph 69 purports to reference litigation in this district, and Netlist admits that the docket in that action speaks for itself.  The remaining allegations of paragraph 69 purports to quote JESD82-31, which speaks for itself.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

70.     Paragraph 70 purports to reference the '024, '595, and '218 Patents, which speak for themselves.  Except as expressly admitted, Netlist denies the allegations of this paragraph.

71.     The allegations of Paragraph 71 call for a legal conclusion to which no response is required.  To the extent further response is necessary, Netlist denies.

72.     Denied.

73.     Netlist admits that it is a member of JEDEC.  Netlist is without knowledge sufficient to admit or deny the remaining allegations in Paragraph 73 and, therefore, denies.

74.    Netlist is without knowledge sufficient to admit or deny the allegations in Paragraph 74 and, therefore, denies.

75.    Netlist is without knowledge sufficient to admit or deny the allegations in Paragraph 75 and, therefore, denies.

76.    Netlist admits that JEDEC members participate in the standard-setting process through certain committees and subcommittees, including by contributing to and/or voting on technical proposals to be incorporated into the JEDEC standards.  With respect to the remaining allegations in paragraph 76, Netlist is without knowledge sufficient to admit or deny and therefore denies.

77.    Netlist is without knowledge sufficient to admit or deny the allegations in the first sentence of paragraph 77 and, therefore, denies.  The remaining allegations of paragraph 77 state legal conclusions to which no response is required.  To the extent any response is necessary, Netlist denies.

78.    Paragraph 78 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

79.    Paragraph 79 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

80.    Paragraph 80 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

81.    Paragraph 81 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

82.    Paragraph 82 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

83.     Paragraph 83 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

84.     Paragraph 84 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

85.     Paragraph 85 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

86.     Paragraph 86 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

87.     Paragraph 87 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

88.     Paragraph 88 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

89.     Paragraph 89 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

90.     Paragraph 90 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

91.     Paragraph 91 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

92.     Admitted.

93.     Netlist admits that it is a member of JEDEC.  Paragraph 93 purports to reference documents and/or communications regarding Netlist's membership in certain JEDEC committees.  The documents and/or communications speak for themselves.  Except as expressly admitted, Netlist denies the allegations of paragraph 93.

- 12 -

94.     Paragraph 94 purports to reference documents and/or communications regarding Netlist's membership in certain JEDEC committees. The documents and/or communications speak for themselves.  Except as expressly admitted, Netlist denies the allegations of paragraph 94.

95.     Netlist admits that it is a member of JEDEC. Netlist is without knowledge sufficient to admit or deny the remaining allegations in paragraph 95 and, therefore, denies.

96.     Netlist admits that it has communicated with JEDEC regarding Netlist's patents. Except as otherwise expressly admitted, Netlist denies the remaining allegations of paragraph 96.

97.     Paragraph 97 contains argument or legal conclusion to which no response is required.  With respect to Plaintiffs' reference to a document relating to the '837 patent Netlist submitted to JEDEC dated April 7, 2016, and a purported JEDEC policy, the document and policy speak for themselves, and therefore, no response is necessary.  Except as expressly admitted, Netlist denies the allegations of paragraph 97.

98.     Paragraph 98 contains argument or legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.  Netlist denies that Samsung can enforce the RAND obligations against Netlist given Samsung's material and extensive hold-out behavior.

99.     Denied.

100.     Paragraph 100 contains argument or legal conclusion to which no response is required.  To the extent paragraph 100 references to or quotes Netlist's pleadings or other filings in other separate litigations, the referenced documents speak for themselves and therefore, no response is necessary.  To the extent any response is necessary, Netlist denies.

101.     Paragraph 101 contains argument or legal conclusion to which no response is required.  To the extent paragraph 101 references to or quotes Netlist's pleadings or other filings

in other separate litigations, the referenced documents speak for themselves and therefore, no response is necessary.  To the extent any response is necessary, Netlist denies.

102.    Denied.

## COUNT I

103.    Netlist incorporates by reference its responses in the preceding paragraphs as if fully set forth herein.

104.    Netlist admits that Plaintiffs purport to have attached a true and correct copy of the '024 Patent certification as Exhibit 1 to the Complaint.  The '024 Patent speaks for itself.  Netlist further admits that Netlist owns by assignment all rights, title, and interest in and to the '024 Patent. Netlist further admits that the USPTO issued the '024 Patent on July 12, 2022, and that the title of the '024 Patent is "Memory Module Having an Open-Drain Output for Parity Error and for Training Sequences."

105.    Paragraph 105 purports to reference the content of the '024 Patent and tabulate the language of claim 1 of the '024 Patent.  The '024 Patent speaks for itself, and therefore a response is unnecessary.  Except as expressly admitted, Netlist denies the allegations of paragraph 105.

106.    Denied.

107.    Paragraph 107 purports to reference the content of the '024 Patent. The '024 Patent speaks for itself, and therefore a response is unnecessary.  The allegations in this paragraph state legal conclusions to which no response is required.  Except as expressly admitted, Netlist denies the allegations of paragraph 107.

108.    Paragraph 108 purports to reference the content of the '024 Patent. The '024 Patent speaks for itself, and therefore a response is unnecessary.  The allegations in this paragraph state

legal conclusions to which no response is required.  Except as expressly admitted, Netlist denies the allegations of paragraph 108.

109.    Denied.

110.    Denied.

111.    Denied.

112.    Netlist denies that Plaintiffs are entitled to any relief.

## COUNT II

113.    Netlist incorporates by reference its responses in the preceding paragraphs as if fully set forth herein.

114.    Denied.

115.    Netlist admits that it has submitted several Letters of Assurance.  These letters speak for themselves, and no response is required.  The remaining allegations in this paragraph state a legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

116.    The allegations in this paragraph state a legal conclusion to which no response is required.  To the extent any response is necessary, Netlist denies.

117.    Denied.

118.    Denied.

119.    Netlist admits that Samsung's license under the JDLA has been terminated.  As to the remaining allegations in the paragraph, Netlist denies.

120.    Denied.

## JURY DEMAND

Netlist respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

Netlist denies that Plaintiffs are entitled to any relief and respectfully requests that the Court deny Plaintiffs' Prayer for Relief such that Plaintiffs shall take nothing in this action.

## NETLIST INC.'S AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear under applicable law and rules, and specifically reserving its rights to assert additional affirmative defenses as further information or materials become available through discovery or otherwise, Netlist asserts the following affirmative defenses to the Complaint.

### First Affirmative Defense: Lack of Subject Matter Jurisdiction

1.      This Court lacks subject matter jurisdiction over Samsung's declaratory judgment and breach of contract claim.

### Second Affirmative Defense: Failure to State a Claim

2.      Samsung's Complaint fails to state a claim upon which relief may be granted.

### Third Affirmative Defense: Lack of Standing

3.      Samsung lacks standing to seek the requested relief for a judgment declaring that SEC, SSI and SEA did not infringe Netlist's Patent-in-Suit.

### Fourth Affirmative Defense: No Breach of Contract

4.      Netlist has not breached any of its obligations, if any exist, under any of the agreements identified in Samsung's Complaint.

### Fifth Affirmative Defense: Breach of Contract by Samsung

5.      Samsung cannot obtain relief pursuant to any agreements identified in the Complaint because Samsung did not fulfill its obligation under these agreements.

6.      Netlist and Samsung entered into the Joint Development and License Agreement ("JDLA") on November 12, 2015.  Under the JDLA, Samsung received certain rights to Netlist's patents having an effective first filing date on or prior to the end of the capture period of the JDLA, *i.e.* five years beginning on November 12, 2015.

7.      On July 15, 2020, Netlist sent a letter to Samsung terminating the JDLA due to Samsung's repeated breach of its contract obligations to supply the NAND and DRAM products to Netlist on Netlist's request and to reasonably cooperate with Netlist in any lawful efforts to claim a tax credit or refund or exemption with the tax withholding authorities.  Netlist also filed a lawsuit against Samsung in the United States District Court for the Central District of California for breach of the JDLA.  *Netlist, Inc. v. Samsung Elec. Co. Ltd.*, No. 20-cv-993-MCS (C.D. Cal.). On October 14, 2021, a Judge in the Central District of California found that there was no material factual dispute that Samsung had materially breached the JDLA and held that Netlist had properly terminated the agreement.  *Id*. Dkt. 186.  Samsung continued to manufacture, use, sell, offer to sell, and import to the United States the Accused Instrumentalities after the JDLA was terminated.

8.      On October 15, 2020, after Netlist terminated the JDLA, Netlist sent a letter to SEC, asking SEC and its subsidiaries to engage in a formal licensing discussion with Netlist regarding Netlist's Patents-in-Suit.  Samsung refused to engage in such discussions with Netlist.

9.      As a result of Samsung's material breach of the JDLA and its failure to engage in licensing discussion with Netlist, Samsung is not entitled to receive a RAND license for Netlist's patents to the extent that they are essential to any JEDEC standards.

**Sixth Affirmative Defense: Unclean Hands**

10.     Netlist incorporates by reference its Affirmative Defenses in the preceding paragraphs as if fully set forth herein.

11.    Samsung's claims are barred in whole or in part by the doctrine of unclean hands.

### Seventh Affirmative Defense: Estoppel

12.    Netlist incorporates by reference its Affirmative Defenses in the preceding paragraphs as if fully set forth herein.

13.    Samsung's claims are barred by the doctrine of estoppel.

### Eighth Affirmative Defense: Limitation on Damages

14.    Samsung has failed to take reasonable and necessary steps to avoid damages, if any, alleged in the Complaint.  To the extent such damages, if any, were incurred, Samsung's recovery, if any, should be reduced accordingly.

### Reservation of Additional Defenses

15.    Netlist reserves the right to assert additional defenses in the event that discovery or other analysis indicate that additional defenses are warranted.

**WHEREFORE**, Netlist respectfully requests that this Court dismiss the Complaint in its entirety, deny all relief Samsung requested therein, and award Netlist costs and expenses it has incurred and such further relief as the Court deems just and proper.

## NETLIST INC.'S COUNTERCLAIMS

For its counterclaims against Counter-Defendants Samsung Electronics Co., Ltd. ("SEC"), Samsung Semiconductor, Inc. ("SSI") and Samsung Electronics America, Inc. ("SEA") (collectively "Samsung"), Counter-Plaintiff Netlist, Inc. ("Netlist") alleges as follows upon actual knowledge with respect to Netlist and its own acts, and upon information and belief as to all other matters:

1.    This Action involves Netlist's U.S. Patent No. 11,386,024 (the "'024 Patent").

## THE PARTIES

2.    Counter-plaintiff Netlist is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 111 Academy Drive, Suite 100, Irvine, CA 92617.

3.    Samsung contends that SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129 Samsung-ro, Yeongtong-gu, Suwon, Gyeonggi, 16677, Republic of Korea.  On information and belief, SEC is the worldwide parent corporation for SSI, and is responsible for the infringing activities identified in this Counterclaims.  On information and belief, SEC's Device Solutions division is involved in the design, manufacture, use, offering for sale and/or sales of certain semiconductor products, including the Accused Instrumentalities.  On information and belief, SEC is also involved in the design, manufacture, and provision of products sold by SEC's subsidiaries or affiliates.

4.    On information and belief, SSI is a corporation organized and existing under the laws of the State of California.  On information and belief, SSI, collectively with SEC, operates the Device Solutions division, which is involved in the design, manufacture, use, offering for sale

and/or sales of certain semiconductor products, including the Accused Instrumentalities as defined below.

5.      On information and belief, SEA is a corporation organized and existing under the laws of the State of New York. On information and belief, SEA, collectively with SEC, operates the Device Solutions division, which is involved in the design, manufacture, use, offering for sale and/or sales of certain semiconductor products, including the Accused Instrumentalities as defined below.

6.      On information and belief, Defendants have used, sold, or offered to sell products and services, including the Accused Instrumentalities, in this judicial district.

## JURISDICTION AND VENUE

7.      Subject matter jurisdiction is based on 28 U.S.C. § 1338, in that this action arises under federal statute, the patent laws of the United States.  35 U.S.C. §§ 100, *et seq*.

8.      SEC, SSI and SEA are subject to this Court's personal jurisdiction because SEC, SSI and SEA have purposefully availed themselves of the benefits and protections of the courts in Delaware, including by bringing this instant lawsuit.  This Court has jurisdiction over SEC, SSI and SEA also because they conduct business in Delaware and performed and continue to perform acts of infringement in this District.

9.      Venue is proper in this District because SEC, SSI and SEA initiated this instant lawsuit in this District.  Venue is also proper as to SEC under 28 U.S.C. § 1391(c)(3) because SEC is a foreign entity incorporated under the laws of the Republic of Korea.

## BACKGROUND

10.     Since its founding in 2000, Netlist has been a leading innovator in high-performance memory module technologies.  Netlist designs and manufactures a wide variety of

high-performance products for the cloud computing, virtualization and high-performance computing markets. Netlist's technology enables users to derive useful information from vast amounts of data in a shorter period of time. These capabilities will become increasingly valuable as the volume of data continues to dramatically increase.

11. The technologies disclosed and claimed in the '024 Patent relate generally to memory modules. In many commercial products, a memory module is a printed circuit board that contains, among other components, a plurality of individual memory devices (such as DRAMs). The memory devices are typically arranged in "ranks," which are accessible by a processor or memory controller of the host system. A memory module is typically installed into a memory slot on a computer motherboard and serve as memory for computer systems.

12. Memory modules are designed for various purposes, including use in server computers supporting cloud-based computing and other data-intensive applications. The structure, function, and operation of memory modules are often defined, specified, and standardized by the JEDEC Solid State Technology Association ("JEDEC"), a standard-setting body for the microelectronics industry. Memory modules are typically characterized by the generation of DRAM on the module (*e.g.*, DDR5, DDR4, DDR3) and the type of module (*e.g.*, RDIMM, LRDIMM).

13. Dual in-line memory modules ("DIMMs") are a type of memory module which generally include SDRAMs mounted on a printed circuit board with other components, *e.g.*, serial presence detect ("SPD") and Hub with thermal sensors. Registered dual in-line memory modules ("RDIMMs") are a type of memory module that use a hardware register (e.g., registering clock driver, or "RCD") that buffers the address and command signals between each DRAM and the memory controller. Load-reduced dual in-line memory modules ("LRDIMMs") are a type of

memory module that generally include SDRAMs mounted on a printed circuit board. LRDIMMs typically also include an RCD for transmitting control and address signals to the SDRAMs and data buffers between the host controller and memory devices.

14.    Netlist designs and manufactures a wide variety of high-performance products for the cloud computing, virtualization, and high-performance computing markets. Netlist's technology enables users to derive useful information from vast amounts of data in a shorter period of time. These capabilities will become increasingly valuable as the volume of data continues to dramatically increase.

15.    Netlist has a long history of being the first to market with disruptive new products such as the first LRDIMM, HyperCloud®, based on Netlist's distributed buffer architecture. Netlist's—and the industry's—first LRDIMM product demonstrated what was previously thought to be impossible: that a server could be fully loaded with memory and still operate at the highest system speeds available at the time.

16.    Netlist was also the first to bring NAND flash to the memory channel with its NVvault® NVDIMM. These innovative products built on Netlist's early pioneering work in areas such as embedding passives into printed circuit boards to free up board real estate, doubling densities via quad-rank double data rate (DDR) technology, and other off-chip technology advances that resulted in improved performance and lower costs compared to conventional memory.

17.    Netlist's innovative LRDIMM technology has since been adopted by JEDEC in its DDR4 LRDIMM standard that is used by companies throughout the industry.

**The Asserted '024 Patent**

18.    The '024 Patent, titled "Memory Module Have an Open-Drain Output for Parity Error and for Training Sequences," issued to inventor Dr. Hyun Lee on July 12, 2022.  The '024 Patent issued from Application No. 16/680,060, file November 11, 2019.

19.    Netlist owns by assignment all rights, title, and interest in and to the '024 Patent.

**Samsung's Infringing Activities**

20.    Samsung is a global technology company and one of the largest manufacturers of semiconductor memory products such as DRAM, NAND Flash, and MCP (Multi-Chip Package). Samsung develops, manufactures, sells, offers to sell, and imports into the United States memory components and memory modules designed for, among other things, use in servers such as those supporting cloud-based computing and other data-intensive applications.

21.    On information and belief, Samsung makes, uses, sells, offers to sell, and/or imports within this District and elsewhere in the United States, without authority, infringing DDR4 RDIMMs products and other products that have materially the same structures and designs in relevant parts (the "accused DDR4 RDIMMs"), infringing DDR4 LRDIMMs products and other products that have materially the same structures and designs in relevant parts (the "accused DDR4 LRDIMMs"), infringing DDR5 RDIMM products and other products that have materially the same structures and designs in relevant parts (the "accused DDR5 RDIMMs") (collectively the "Accused Instrumentalities").

22.    By way of example, the Accused Instrumentalities include, but are not limited to, Samsung products listed on Samsung's module-selector web page.  *Memory Modules For Extensive Use*, Samsung, https://www.samsung.com/semiconductor/dram/module.

23.    Netlist and Samsung entered into a Joint Development and License Agreement ("JDLA") on November 12, 2015.  Under the JDLA, Samsung received certain rights to certain of Netlist's patents having an effective first filing date on or prior to the end of the capture period of the JDLA, *i.e.* five years beginning on November 12, 2015.

24.    On July 15, 2020, Netlist sent a letter to Samsung terminating the JDLA due to Samsung's repeated breach of its contract obligations to supply NAND and DRAM products to Netlist on Netlist's request and to reasonably cooperate with Netlist in any lawful efforts to claim a tax credit or refund or exemption with the tax withholding authorities.  Netlist filed a lawsuit against Samsung in the United States District Court for the Central District of California for breach of the JDLA.  *Netlist, Inc. v. Samsung Elec. Co. Ltd.*, No. 20-cv-993 (C.D. Cal.).

25.    On October 14, 2021, the Central District of California found that there was no material factual dispute that Samsung had materially breached the JDLA and held that Netlist had properly terminated the agreement.  *Id*. Dkt. 186.  A final judgment finding the same was entered against Samsung on February 15, 2022.  *Id.* Dkt. 306.  The Central District held another jury trial on the issue in 2025, and the jury again returned a verdict that Netlist had properly terminated the agreement.  Samsung continued to manufacture, use, sell, offer to sell, and import to the United States the Accused Instrumentalities after the JDLA was terminated.

## CLAIMS FOR RELIEF

### Count I

### (Infringement of the '024 Patent)

26.    Netlist alleges and incorporates by reference the allegations of the preceding paragraphs of the Affirmative Defenses and Counterclaims as if fully set forth herein.

27.    On information and belief, Samsung directly infringed and is currently infringing at least one claim of the '024 Patent by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, the Accused Instrumentalities.    For example, on information and belief, the Accused Instrumentalities infringe at least claim 1 of the '024 Patent.

28.    To the extent the preamble is limiting, on information and belief, each Accused Instrumentalities comprises a memory module operable with a memory controller of a host system.

29.    On information and belief, the Accused Instrumentalities each comprise a printed circuit board having edge connections that fit into a corresponding slot of the host system so as to be in electrical communication with the memory controller, the edge connections including first edge connections, second edge connections, and an error edge connection in addition to the first edge connections and the second edge connections.

30.    On information and belief, the Accused Instrumentalities each comprise a module controller on the printed circuit board and configured to receive address and control signals associated with normal memory read or write operations via the first edge connections.

31.    On information and belief, the Accused Instrumentalities each includes dynamic random access memory elements on the printed circuit board and configured to communicate data signals with the memory controller via the second edge connections in accordance with the address and control signals.

32.    Further, on information and belief the module controller of the Accused Instrumentalities has a transistor having an open drain output coupled to the error edge connection, a source coupled to ground, and a gate.

33.    On information and belief, the Accused Instrumentalities are configurable to apply a first signal to the gate of the transistor to indicate a parity error having occurred when the memory module is being accessed for a normal memory read or write operation.

34.    On information and belief, in the Accused Instrumentalities the module controller is further configured to apply a second signal related to one or more training sequences to the gate of the transistor when the memory module performs operations associated with the one or more training sequences and when the dynamic random access memory elements are not accessed for any normal memory read or write operations.

35.    On information and belief, Samsung also indirectly infringes the '024 Patent, as provided in 35 U.S.C. § 271(b), by inducing infringement by others, such as their customers and end users, in this District and elsewhere in the United States.  For example, on information and belief, Samsung has induced, and currently induces, the infringement of the '024 Patent through their affirmative acts of making, selling, offering to sell, distributing, and/or otherwise making available the Accused Instrumentalities that infringe the '024 Patent.  On information and belief, Samsung provides specifications, datasheets, instruction manuals, and/or other materials that encourage and facilitate infringing use of the Accused Instrumentalities by users in a manner that it knows or should have known would result in infringement and with the intent of inducing infringement.

36.    On information and belief, Samsung indirectly infringes the '024 Patent, as provided in 35 U.S.C. § 271(c), contributing to direct infringement committed by others, such as customers and end users, in this District and elsewhere in the United States.  For example, on information and belief, Samsung contributed to, and currently contributes to, its customers' and end users' infringement of the '024 Patent through its affirmative acts of selling and offering to

sell, in this District and elsewhere in the United States, the Accused Instrumentalities that infringe the '024 Patent. On information and belief, the Accused Instrumentalities have no substantial noninfringing use and constitute a material part of the patented invention. On information and belief, Samsung is aware that the product or process that includes the Accused Instrumentalities would be covered by one or more claims of the '024 Patent. On information and belief, the use of the product or process that includes the Accused Instrumentalities infringes at least one claim of the '024 Patent.

37.    Samsung's infringement of the '024 Patent has damaged and will continue to damage Netlist.

38.    Samsung has had actual notice of the '024 Patent since its issuance. Samsung's infringement of the '024 Patent has been continuing and willful. Samsung continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Samsung knew or should have known that its actions constituted an unjustifiably high risk of infringement.

<u>**DEMAND FOR TRIAL BY JURY**</u>

39.    Pursuant to Federal Rule of Civil Procedure 38(b), Netlist hereby demands a trial by jury on all issues triable to a jury.

<u>**PRAYER FOR RELIEF**</u>

40.    WHEREFORE, Netlist respectfully requests that this Court enter judgment in Netlist's favor, ordering, finding, declaring, and/or awarding Netlist relief as follows:

a.    that Samsung infringes the Patent-in-Suit;

b.    all equitable relief the Court deems just and proper as a result of Samsung's infringement;

c.    an award of damages resulting from Samsung's acts of infringement in accordance with 35 U.S.C. § 284;

d.    that Samsung's infringement of the Patent-in-Suit is willful;

e.    enhanced damages pursuant to 35 U.S.C. § 284;

f.    that this is an exceptional case and awarding Netlist its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

g.    an accounting for acts of infringement and supplemental damages, without limitation, prejudgment and post-judgment interest; and

h.    such other equitable relief which may be requested and to which Netlist is entitled.


<table>
<tr><td></td><td><i>/s/ Karen E. Keller</i></td></tr>
</table>

/s/ Karen E. Keller

Karen E. Keller (No. 4489)
Emily S. DiBenedetto (No. 6779)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
edibenedetto@shawkeller.com
*Attorneys for Netlist, Inc.*

OF COUNSEL:
Jason Sheasby
H. Annita Zhong
Andrew J. Strabone
IRELL & MANELLA LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
(310) 277-1010

Dated: June 2, 2025